UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LORENA DEL CARMEN ALVAREZ SOSA,

                Plaintiff,

    -against-

ATTORNEY GENERAL WILLIAM P. BARR,
SECRETARY KIRSTJEN M. NIELSEN, ACTING
DEPUTY SECRETARY CLAIRE M. GRADY,
DISTRICT DIRECTOR THOMAS CIOPPA,
ACTING DISTRICT DIRECTOR JOHN THOMPSON,
and BARBARA Q. VELARDE, CHIEF OF THE
ADMINISTRATIVE APPEALS OFFICE[1],

                Defendants.
------------------------------------------------------------------X

**ORDER**

17-CV-4520 (SJF)(GRB)

FEUERSTEIN, District Judge:

        Pending before the Court are the objections of plaintiff Lorena del Carmen Alvarez Sosa

(collectively, "plaintiff") to the Report and Recommendation of the Honorable Gary R. Brown,

United States Magistrate Judge, dated February 4, 2019 ("the Report"), recommending that

defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure be granted in all respects. For the reasons set forth below, the Report is accepted

in its entirety and, for the reasons set forth below and in the Report, defendants' motion for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is

granted in all respects.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), United States Attorney General William P. Barr is automatically substituted as a party in place of former United States Attorney General Jefferson Sessions, III; Kirstjen Nielsen, the current Secretary of the United States Department of Homeland Security ("DHS"), is automatically substituted as a party in place of Secretary John F. Kelly; Claire M. Grady, the Acting Deputy Secretary of DHS, is automatically substituted as a party in place of former Deputy Secretary Elaine Duke; Thomas Cioppa, the District Director of the New York Field Office of the United States Citizenship and Immigration Services ("USCIS"), is automatically substituted as a party in place of District Director Phyllis Coven and Acting District Director John Thompson; and Barbara Q. Velarde, the current chief of the Administrative Appeals Office ("AAO") of USCIS, is automatically substituted as a party in place of her predecessor, Ron Rosenberg. The Clerk of the Court shall amend the docket accordingly.

I.      Discussion

A.      Standard of Review

Any party may serve and file written objections to a report and recommendation of a magistrate judge on a dispositive matter within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Any portion of such a report and recommendation to which a timely objection has been made is reviewed *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court, however, is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Any portion of a report and recommendation to which no specific timely objection is made is reviewed only for clear error. *See* Fed. R. Civ. P. 72(b); *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000) (a court may review a report to which no timely objection has been interposed to determine whether the magistrate judge committed "plain error.")

Moreover, objections that simply reiterate the original arguments, without identifying a specific error in the report and recommendation, *e.g.*, why a specific finding or conclusion is faulty or the magistrate judge erred in rejecting a specific argument, are reviewed under the clear error standard. *See, e.g. Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018); *E.E.O.C. v. AZ Metro Distribs., LLC*, 272 F. Supp. 3d 336, 339 (E.D.N.Y. 2017). "The goal of the federal statute providing for the assignment of cases to magistrates is to increase the overall efficiency of the federal judiciary[] . . . [and] [t]here is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." *Wider v. Colvin*, 245 F. Supp. 3d 381, 385 (E.D.N.Y. 2017) (quotations and

citations omitted); *Bassett v. Electronic Arts, Inc.*, 93 F. Supp. 3d 95, 100-01 (E.D.N.Y. 2015) ("The clearly erroneous standard . . . applies when a party makes only conclusory or general objections, or simply reiterates its original arguments."); *Trivedi v. New York State Unified Court Sys. Office of Court Admin.*, 818 F. Supp. 2d 712, 726 (S.D.N.Y. 2011), *aff'd sub nom Seck v. Office of Court Admin.*, 582 F. App'x 47 (2d Cir. Nov. 6, 2014) ("[W]hen a party makes only conclusory or general objections [] the Court will review the Report strictly for clear error.[] Objections to a Report must be specific and clearly aimed at particular findings in the magistrate judge's proposal." (quotations, alterations and citation omitted)).

Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).


B.      Objections

Plaintiff assigns no specific error to any of Magistrate Judge Brown's findings or conclusions in the Report. Rather, plaintiff reiterates her original arguments in opposition to defendants' motion for judgment on the pleadings, *inter alia*, that it was arbitrary, capricious, an abuse of discretion and unlawful for the USCIS: (i) to fail (A) to send her a request for evidence ("RFE"), (B) to consider the Family Court orders which were issued after she filed her application for special immigrant juvenile ("SIJ") classification ("I-360 Petition"), but were received by USCIS before it had reviewed her I-360 Petition, and (C) to recognize that the family court orders "were in effect when [it] began to review [plaintiff's] . . . application[,]" (Plaintiff's Objections to the Report ["Plf. Obj."] at 1-3; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings ["Plf. Mem."] at 7-8); and (ii)

to deny her I-360 Petition "precisely because of her age, contrary to the provisions of Section 235(d)(6) of the 2008 [Trafficking Victims Protection Reauthorization Act ('2008 TVPRA'), 8 U.S.C. § 1232(d)(6)]. . . ."[2] (Plf. Obj. at 3-4).

To the extent that plaintiff's "objections" can be construed as asserting that Magistrate Judge Brown erred in failing to consider her claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), plaintiff never expressly raised such a claim in her complaint.[3] Rather, the complaint: (i) asserts, in relevant part, that "[t]his is a proceeding seeking mandamus relief under all [sic] the All Writs Act, 28 U.S.C. § 1651 . . . [and] declaratory relief under 28 U.S.C. §§ 2201 and 2202[,]"(Complaint ["Compl."], ¶ 14)[4]; (ii) sets forth six (6) claims alleging that defendants (A) violated the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(27)(J); Section 235(d)(6) of the 2008 TVPRA, 8 U.S.C. § 1232(d)(6); the terms of the settlement agreement in the class action, *Perez-Olano v. Holder*, No. 05-cv-2604 (C.D. Cal.

---

[2] Contrary to defendants' contention, plaintiff's claim alleging that defendants' conduct violated Section 235(d)(6) of the 2008 TVPRA is not a new argument, as she addressed that claim in her opposition to the defendants' motion for judgment on the pleadings. Specifically, plaintiff contended, *inter alia*, that USCIS's "decision failed to understand that it cannot deny SIJ petitions based upon age where a petition is initially filed before the minor's 21st birthday under 8 U.S.C. § 1232(d)(6)." (Plf. Mem. at 8).

[3] Unlike plaintiff's claims under 5 U.S.C. § 706(2)(A), the Report fully addresses plaintiff's due process claim, (Report at 7-8), and her mandamus claim, (Report at 5-7), and plaintiff assigns no specific error with respect thereto. Accordingly, plaintiff's "objections" (1) that "the practice of [US]CIS in this regard [*i.e.*, in acting in a way that was arbitrary. capricious and an abuse of discretion] is unfair and [a] violation of a clear constitutional right as guaranteed by the due process clause of the [F]ifth [A]mendment[,]" (Plf. Obj. at 4); and (ii) that "[u]nder this Court's mandamus authority, . . . this Court has the jurisdiction to remand this matter to the agency to make a decision that includes consideration of the [F]amily [C]ourt orders[,]" (*id.*), are mere reiterations of her original arguments which were rejected by Magistrate Judge Brown and are insufficient to invoke *de novo* review of those claims. Moreover, with respect to the latter contention, it is clear from the administrative record that USCIS considered the Family Court orders in denying plaintiff's I-360 Petition. (Administrative Record ["AR"] at 55).

[4] The complaint also asserts, *inter alia*, that this Court "has jurisdiction of this matter pursuant to 28 U.S.C. § 1361, which grants jurisdiction for proceedings to mandamus to compel an agency officer to perform a duty owed to Plaintiff[]." (Compl., ¶ 11).

2005) (the "*Perez-Olano* Settlement Agreement")[5]; and "the Fifth Amendment's guarantee of due process of law," by failing to grant plaintiff's I-360 Petition (first through fourth claims for relief, respectively), (Compl., ¶¶ 51-57), (B) violated 8 C.F.R. § 204.11 "and other regulations" by failing to grant her I-360 Petition and to send an RFE "which [US]CIS normally sends to all applicants to request missing documents and to allow applicants additional to [sic] submit such documentation" (fifth claim for relief), (Compl., ¶ 59), and (C) "violated provisions of the [APA] in making 8 C.F.R. § 204.11 a rule as it contradicts 8 U.S.C. § 1101(a)(27)(J) and is thus an impermissible interpretation of the statute" (sixth claim for relief), (Compl., ¶ 61); and (iii) seeks an order granting plaintiff's I-360 Petition or "issu[ing] instructions to the Defendants on further processing of the I-360 [Petition]." (Compl. at 13, "Wherefore" clause). The only references in the complaint to the APA are in the sixth claim for relief, where, in addition to the aforementioned assertion that defendants' violated the APA by promulgating 8 C.F.R. § 204.11, (*see* Compl., ¶ 61), plaintiff cites two sections of the APA for the general proposition that the statute "authorizes suits by a 'person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute[,]'" (Compl., ¶ 62) (quoting 5 U.S.C. § 702); and "also provides relief for a failure to act: 'The reviewing court shall . . . compel agency action unlawfully withheld or  unreasonably delayed.'" (*Id.*) (quoting 5 U.S.C. § 706(1)).

Nonetheless, since both parties addressed plaintiff's first, second, fifth and sixth claims in the complaint as potentially asserting claims under 5 U.S.C. § 706(2)(A), (*see* Defendants' Memorandum of Law in Support of Motion for Judgment on the Pleadings at 17-20; Plf. Mem. at

---

[5] Nothing in plaintiff's objections can be construed as objecting to so much of the Report as recommends dismissing her claim alleging that defendants violated the *Perez-Olano* settlement agreement. (Report at 7). Accordingly, like plaintiff's mandamus and due process claims, that claim is reviewed only for clear error.

6-8, 10; and Defendants' Reply Memorandum in Further Support of Motion for Judgment on the Pleadings at 4-7), and this Court recently construed similar claims asserted by another plaintiff in the case *Espinoza Calle v. Whitaker*, No. 18-cv-1957 (E.D.N.Y), to assert claims under 5 U.S.C. § 706(2)(A), the Court will likewise construe plaintiff's complaint as asserting claims under 5 U.S.C. § 706(2)(A).[6] Specifically, in addition to plaintiff's sixth claim for relief, plaintiff's claims alleging that defendants violated the INA (first claim for relief), its implementing regulations (fifth claim for relief) and the 2008 TVPRA (second claim for relief) are construed as seeking judicial review of the decision denying her I-360 Petition pursuant to 5 U.S.C. § 706(2), which empowers the reviewing court, *inter alia*, to "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ."

### 1. APA Review

The standard of review under 5 U.S.C. § 706(2)(A) "is highly deferential and presumes the agency's action to be valid." *Residents for Sane Trash Sols., Inc. v. U.S. Army Corps. of Eng'rs*, 31 F. Supp. 3d 571, 588 (S.D.N.Y. 2014), *appeal dismissed*, No. 14-3396 (2d Cir. Oct. 15, 2014); *see also Coal. on W. Valley Nuclear Wastes v. Bodman*, 625 F. Supp. 2d 109, 116 (W.D.N.Y. 2007), *aff'd sub nom Coal. on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306 (2d Cir. 2009) ("An agency's decision is accorded a presumption of regularity. . . ." (quotations and citation omitted)). The Court "must consider whether the [agency's] decision was based on a

---

[6] Indeed, the petition in this case initially asserted claims on behalf of three (3) plaintiffs: Alvarez Sosa, *i.e.*, the current plaintiff, and two (2) others, Jaime Rolando Espinoza Calle ("Espinoza Calle") and Oscar Guerra Mena ("Mena"). However, by order dated March 22, 2018, defendants' motion to sever the claims of Espinoza Calle and Mena was granted and they were directed to serve and file separate complaints in order to proceed with their claims. Espinoza Calle commenced a new action, which was assigned to the undersigned under docket number 18-cv-1957, but Mena did not.

consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Volpe*, 401 U.S. at 416, 91 S. Ct. 814; *see also Natural Res. Defense Council, Inc. v. F.A.A. ("NRDC")*, 564 F.3d 549, 555 (2d Cir. 2009) (holding that under the deferential standard of review set forth in Section 706(2)(A), courts "cannot substitute [their] judgment for that of the agency.") "The record must show that the agency [] examined the relevant data and articulated a satisfactory explanation for its action[;] . . . [and] the agency's decision must reveal a rational connection between the facts found and the choice made." *NRDC*, 564 F.3d at 555 (quotations, alterations and citations omitted); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (quotations and citation omitted)). In reviewing the agency's explanation, the court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs.*, 463 U.S. at 43, 103 S. Ct. 2856. "If there is sufficient evidence in the record to provide rational support for the choice made by the agency, [the court] must uphold its decision." *Constitution Pipeline Co. v. New York State Dep't of Envtl. Conservation*, 868 F.3d 87, 102 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1697, 200 L. Ed. 2d 953 (2018) (quotations and citation omitted).

"Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important

aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs.*, 463 U.S. at 43, 103 S. Ct. 2856. Although the reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given[,]" the agency's decision should be upheld, even if it is "of less than ideal clarity,[] if the agency's path may reasonably be discerned." *Id.* (quotations and citation omitted); *accord F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009). "[T]he party challenging the decision has the burden of proof." *Bodman*, 625 F. Supp. 2d at 116; *see also Miezgiel v. Holder*, 33 F. Supp. 3d 184, 189 (E.D.N.Y. 2014) ("Plaintiffs bear the burden of showing, by citation to evidence in the administrative record, that an agency's actions are arbitrary and capricious.")

a. Claims pursuant to 8 U.S.C. §§ 1101(a)(27)(J) and 8 C.F.R. § 204.11

"The Immigration and Nationality Act of 1990 included a new form of immigration relief for non-citizen children." *Budhathoki v. Nielsen*, 898 F.3d 504, 508 (5th Cir. 2018). As relevant here, "SIJ status provides a path for certain children to become lawful residents of the United States." *Id.* Specifically, "Congress established SIJ status in 1990 in order to protect abused, neglected or abandoned children who, with their families, illegally entered the United States, . . . and it entrusted the review of SIJ petitions to USCIS, a component of DHS."[7] *Osorio-Martinez v. Attorney General United States of America*, 893 F.3d 153, 162 (3d Cir. 2018) (quotations and

---

[7] "Once attained, SIJ classification conveys a host of important benefits." *Osorio-Martinez*, 893 F.3d at 163 (citing, *inter alia*, 8 U.S.C. §§ 1153(b)(4), 1232(d)(4)(A), 1255(a) and (h)(1) and (2), 1182(a)); *see also Reyes v. Cissna*, 737 F. App'x 140, 142 (4th Cir. June 8, 2018) (summary order) ("Obtaining SIJ status is a significant benefit because such an alien . . . is potentially eligible for lawful permanent resident status irrespective of her immigration status[,] . . . [and] may eventually apply for United States citizenship." (citing 8 U.S.C. §§ 1153(b)(4) and 1154(a)(1)(G))); USCIS Policy Manual, vol. 7, pt. F Chapter 7, https://www.uscis.gov/policymanual (last visited Mar. 30, 2019).

citations omitted); *see also* USCIS Policy Manual, vol. 6, pt. J Chapter 1,

https://www.uscis.gov/policymanual (last visited Mar. 30, 2019).

Under Section 101(a)(27)(J) of the INA, SIJ status is available to:

> "an immigrant who is present in the United States--(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that-- (I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and (II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter. . . ." (emphasis added).

8 U.S.C. § 1101(a)(27)(J); *see also Boyron v. Lynch*, 604 F. App'x 72, 73-74 (2d Cir. May 20, 2015) (summary order) ("To be eligible for SIJS [Special Immigrant Juvenile Status], an alien must establish that he 'has been declared dependent on a juvenile court ... or ... has [been] legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court.' 8 U.S.C. § 1101(a)(27)(J)(i). In addition, he must demonstrate that "reunification with 1 or both ... parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law ... [and that] it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality.' *Id.* § 1101(a)(27)(J)(i), (ii). Finally, the Secretary of [DHS] must consent to the grant of SIJS. *Id.* § 1101(a)(27)(J)(iii)." (alterations in original)); *Osorio-Martinez*, 893 F.3d at 163 ("Alien children

may receive SIJ status only after satisfying a set of rigorous, congressionally defined eligibility criteria, including that a juvenile court find it would not be in the child's best interest to return to her country of last habitual residence and that the child is dependent on the court or placed in the custody of the state or someone appointed by the state. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). The child must also receive approval from USCIS and the consent of the Secretary of [DHS] to obtain the status. 8 U.S.C. § 1101(a)(27)(J).")

The implementing regulations define the term "juvenile court" to mean "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). The regulations provide, in relevant part, that "an alien may not be classified as a[n] [SIJ] unless the alien is the beneficiary of an approved petition to classify an alien as a special immigrant under section 101(a)(27) of the [INA]. The petition must be filed on Form I-360. . . ." *Id.*, § 204.11(b).

In addition, the regulations provide, in pertinent part:

"(c) Eligibility. An alien is eligible for classification as a special immigrant under section 101(a)(27)(J) of the [INA] if the alien: (1) Is under twenty-one years of age; (2) Is unmarried; (3) Has been declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency, while the alien was in the United States and under the jurisdiction of the court; (4) Has been deemed eligible by the juvenile court for long-term foster care; (5) Continues to be dependent upon the juvenile court and eligible for long-term foster care, such declaration, dependency or eligibility not having been vacated, terminated, or otherwise ended; and (6) Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents. . . .

(d) Initial documents which must be submitted in support of the petition. (1) Documentary evidence of the alien's age, in the form of a birth certificate, passport, official foreign identity document issued by a foreign government, . . . or other document which in the discretion of the director establishes the beneficiary's age; *and* (2) One or more documents which include: (i) A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the

court has found the beneficiary to be dependent upon that court; (ii) A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary eligible for long-term foster care; and (iii) Evidence of a determination made in judicial or administrative proceedings by a court or agency recognized by the juvenile court and authorized by law to make such decisions, that it would not be in the beneficiary's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or of his or her parent or parents."

8 C.F.R. § 204.11 (emphasis added); *see also* USCIS Policy Manual, vol. 6, pt. J Chapter 2, https://www.uscis.gov/policymanual (last visited Mar. 30, 2019) ("A petitioner must satisfy the following requirements to qualify for SIJ classification: . . . Under the age of 21 *on the date of filing* the [I-360 Petition][;] Juvenile court order (or orders) issued in the United States that meets the specified requirements [and] [DHS] consent. . . ." (emphasis added))[8]. Thus, "[o]nce the applicant has the necessary predicate [juvenile court] order, he must submit his application to the agency, attaching the state court order." *Budhathoki*, 898 F.3d at 508; *see also Osorio-Martinez*, 893 F.3d at 170 (holding that once an applicant has obtained the necessary order of dependency from a state juvenile court, he or she "must then file an application with USCIS, along with 'sufficient evidence to establish [] eligibility' and the associated filing fee." (quoting 6 USCIS Policy Manual, pt. J, ch. 4)); USCIS Policy Manual, vol. 6, pt. J Chapter 2, https://www.uscis.gov/policymanual (last visited Mar. 30, 2019) ("USCIS' adjudication of the SIJ petition includes review of the petition, the juvenile court order (or orders), and supporting evidence to determine if the petitioner is eligible for SIJ classification.")

---

[8] The Policy Manual further provides, in relevant part, that "USCIS considers the petitioner's age *at the time the SIJ petition is filed* when determining whether the petitioner has met the age requirement." USCIS Policy Manual, vol. 6, pt. J Chapter 2, https://www.uscis.gov/policymanual (last visited Mar. 30, 2019) (emphasis added) (citing Section 235(d)(6) of the 2008 TVPRA). In addition, the Policy Manual provides, in pertinent part, that "[i]f a petitioner was under 21 years of age on the date of the *proper* filing of Form I-360, USCIS cannot deny SIJ classification *solely* because the petitioner is older than 21 years of age at the time of adjudication." *Id.* (emphasis added).

Pursuant to the INA, "[w]henever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon such person to establish that he is eligible to receive such visa or such document, or is not inadmissible under any provision of this chapter, and, if an alien, that he is entitled to the nonimmigrant, immigrant, special immigrant, immediate relative, or refugee status claimed, as the case may be." 8 U.S.C. § 1361. Thus, an individual petitioning for SIJ status "bears the burden of establishing eligibility [therefor]." *Budhathoki*, 898 F.3d at 508-09; *see also Reyes*, 737 F. App'x at 142 ("The applicant bears the burden of proving she is entitled to SIJ status.")

Moreover, "[a]n applicant or petitioner must establish that he or she is eligible for the requested benefit *at the time of filing the benefit request* and must continue to be eligible through adjudication. Each benefit request must be properly completed and *filed with all initial evidence required* by applicable regulations and other USCIS instructions. . . ." 8 C.F.R. § 103.2(b)(1) (emphasis added). "If all required initial evidence is not submitted with the benefit request or does not demonstrate eligibility, USCIS in its discretion may deny the benefit request for lack of initial evidence or for ineligibility or request that the missing initial evidence be submitted within a specified period of time as determined by USCIS." 8 C.F.R. § 103.2(b)(8)(ii).

Plaintiff has not satisfied her burden of showing that defendants' decision denying her I-360 Petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Plaintiff cites no law in support of her assertion that USCIS "was required to grant the I-360 application with no orders attached, because [it] could have checked with the Nassau County Family Court that the required judicial findings (and orders) were issued one day before [plaintiff's] 21st birthday." (Plf. Mem. at 1-2; *see also Id.* at 6

["asserting that "all that was required" was that "the required family court orders were in effect before [plaintiff's] 21st birthday"]; *Id.* at 8 ["By the time [US]CIS reviewed the I-360 [Petition], it was true that the family court orders were approved"]; and *Id.* at 10 ["The agency acted arbitrarily in denying [plaintiff's] I-360 petition because the family court orders were sent to [US]CIS after it had received the initial I-360 petition"]). Indeed, the relevant law, set forth above, indicates otherwise, *i.e.*, that an alien applying for SIJ classification must obtain the necessary juvenile court order(s) prior to filing his or her I-360 application, together with the initial evidence required to establish eligibility under 8 C.F.R. § 204.11(d), with USCIS. *See* 8 C.F.R. § 103.2(b)(1); *e.g. Budhathoki*, 898 F.3d at 508; *Osorio-Martinez*, 893 F.3d at 170; USCIS Policy Manual, vol. 6, pt. J Chapter 2, https://www.uscis.gov/policymanual (last visited Mar. 30, 2019). Since, at the time plaintiff filed her I-360 Petition, she had not been "declared dependent on a juvenile court ... or ... legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court," 8 U.S.C. § 1101(a)(27)(J)(i); nor had it been determined in any "administrative or judicial proceedings that it would not be in [plaintiff's] best interest to be returned to [her] or [her] parent's previous country of nationality or country of last habitual residence," *id.*, § 1101(a)(27)(J)(ii), she was not a "special immigrant" within the meaning of Section 101(a)(27)(J) of the INA.

Plaintiff also has not satisfied her burden of showing that defendants' failure to send her an RFE, providing her additional time to submit documentation missing from her I-360 Petition, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). The applicable regulation, 8 C.F.R. § 103.2(b), provides, in relevant part:

"(8) Request for Evidence; Notice of Intent to Deny—

(i) Evidence of eligibility or ineligibility. If the evidence submitted with the benefit request establishes eligibility, USCIS will approve the benefit request, except that in any case in which the applicable statute or regulation makes the approval of a benefit request a matter entrusted to USCIS discretion, USCIS will approve the benefit request only if the evidence of record establishes both eligibility and that the petitioner or applicant warrants a favorable exercise of discretion. If the record evidence establishes ineligibility, the benefit request will be denied on that basis.

(ii) Initial evidence. If all required initial evidence is not submitted with the benefit request or does not demonstrate eligibility, USCIS *in its discretion* may deny the benefit request for lack of initial evidence or for ineligibility or request that the missing initial evidence be submitted within a specified period of time as determined by USCIS.

(iii) Other evidence. If all required initial evidence has been submitted but the evidence submitted does not establish eligibility, USCIS may: deny the benefit request for ineligibility; request more information or evidence from the applicant or petitioner, to be submitted within a specified period of time as determined by USCIS; or notify the applicant or petitioner of its intent to deny the benefit request and the basis for the proposed denial, and require that the applicant or petitioner submit a response within a specified period of time as determined by USCIS.

(iv) Process. A request for evidence or notice of intent to deny will be communicated by regular or electronic mail and will specify the type of evidence required, and whether initial evidence or additional evidence is required, or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond. The request for evidence or notice of intent to deny will indicate the deadline for response, but in no case shall the maximum response period provided in a request for evidence exceed twelve weeks, nor shall the maximum response time provided in a notice of intent to deny exceed thirty days. Additional time to respond to a request for evidence or notice of intent to deny may not be granted.

* * *

(11) Responding to a request for evidence or notice of intent to deny. In response to a request for evidence or a notice of intent to deny, and within the period afforded for a response, the applicant or petitioner may: submit a complete response containing all requested information at any time within the period afforded; submit a partial response and ask for a decision based on the record; or withdraw the benefit request. All requested materials must be submitted together at one time, along with the original USCIS request for evidence or notice of intent to deny. Submission of only some of the requested evidence will be considered a request for a decision on the record.

(12) Effect where evidence submitted in response to a request does not establish

eligibility at the time of filing. A benefit request shall be denied where evidence submitted in response to a request for evidence does not establish filing eligibility *at the time the benefit request was filed*. A benefit request shall be denied where any benefit request upon which it was based was filed subsequently." (emphasis added).

Initially, it is clear from the plain language of that regulation that USCIS is not required to send an RFE or NOID to a petitioner whenever a benefit request fails to include all required evidence. Rather, the USCIS has the discretion to either deny the benefit request or request the submission of the omitted evidence. *See Id.*, § 103.2(b)(8)(ii).

Moreover, the administrative record demonstrates that at the time USCIS reviewed and determined plaintiff's I-360 Petition, it had already received copies of the Family Court orders that were missing therefrom, (AR at 55), so there was no need for it to send plaintiff an RFE. Contrary to plaintiff's contention, USCIS clearly considered the Family Court orders notwithstanding their omission from her I-360 Petition, as it specifically referenced the Special Findings Order in the decision denying her I-360 Petition. However, since plaintiff's I-360 Petition, which was signed on August 21, 2015, answered "Yes" to the questions asking: (i) if she had "been declared dependent on a juvenile court in the United States, or . . . [been] legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court[;]" (ii) if a juvenile court had declared that "reunification with one or both [of her] parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law[;]" and (iii) if she had "been the subject of proceedings in which it was determined that it would not be in [her] best interest to be returned to [her] or [her] parent's previous country of nationality or last habitual residence[,]" (AR 4), yet the Family Court did not even issue the Special Findings Order making those determinations until August 25, 2015, *i.e.*, four (4) days after plaintiff had signed the I-360 Petition and one (1)

day after she had filed it with USCIS, plaintiff's I-360 Petition was denied for her failure to establish her eligibility for SIJ classification under Section 101(a)(27)(J) of the INA. Plaintiff does not identify any additional evidence she could have sent to USCIS in response to an RFE that would have affected that determination of ineligibility.[9]

Since plaintiff cannot demonstrate that defendants' actions in denying her I-360 Petition and failing to send her an RFE were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" 5 U.S.C. § 706(2)(A), the branch of defendants' motion seeking judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure dismissing those claims is granted and plaintiff's APA claims alleging violations of 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11 (first and fifth claims for relief) are dismissed in their entirety with prejudice.[10]

### b. Validity of 8 C.F.R. § 204.11[11]

Plaintiff's sixth claim for relief alleges that defendants have "violated provisions of the [APA] in making 8 C.F.R. § 204.11 a rule as it contradicts 8 U.S.C. § 1101(a)(27)(J) and is thus an impermissible interpretation of the statute." (Compl., ¶¶ 60-62).

Pursuant to *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), federal courts "apply a two-step inquiry to an agency's

---

[9] Indeed, USCIS dismissed plaintiff's motion to reopen and reconsider the decision denying her I-360 Petition, *inter alia*, for plaintiff's failure "to provide new or additional evidence . . . establishing that th[e] decision was in error." (AR 63).

[10] Plaintiff's contentions regarding the Government's allegedly erroneous interpretation of New York law in its memorandum of law in support of defendants' motion, (*see* Plf. Mem. at 3, 8-9), are irrelevant to this Court's review of defendants' decision because plaintiff's I-360 Petition was not denied based upon her age or the New York law she challenges. Accordingly, this Court has not considered the Government's interpretation of that New York law, which is not at issue in this matter, nor plaintiff's contentions challenging such interpretation.

[11] Plaintiff does not challenge the validity of 8 C.F.R. § 103.2; only the validity of 8 C.F.R. § 204.11.

interpretation of a statute." *Cappetta v. Comm'r of Soc. Sec. Admin.*, 904 F.3d 158, 166 (2d Cir. 2018). In *Chevron*, the Supreme Court held:

> "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."

*Id.* at 842-43, 104 S. Ct. 837. As explained by the Supreme Court:

> "The power of an administrative agency to administer a congressionally created [] program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. . . . If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."

*Chevron*, 467 U.S. at 843-44, 104 S. Ct. 2778 (quotations, alterations and citation omitted); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs*, 545 U.S. 967, 980, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005) ("[A]mbiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion. Filling these gaps . . . involves difficult policy choices that agencies are better equipped to make than courts. . . . If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." (citations omitted)).

"*Chevron* deference is appropriate where Congress has delegated authority to an administrative agency to make rules carrying the force of law and that agency's interpretation to which deference is to be given was promulgated in the exercise of that authority." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 168 (2d Cir. 2017); *see also U.S. v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) ("[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.") Since 8 C.F.R. § 204.11 was promulgated pursuant to Congress's delegation of authority, *see* 58 Fed. Reg, 42843-01 (Aug. 12, 1993), *Chevron* deference is appropriate.

At the first step of the *Chevron* analysis, the court "examine[s] the regulation [at issue] against the statute that contains the agency's charge[,]" *Cooling Water Intake Structure Coal. v. EPA*, 905 F.3d 49, 64-65 (2d Cir. 2018) (quotations, alterations and citation omitted), to determine whether the agency has followed the "unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43, 104 S. Ct. 2778 (quotations and citation omitted). In other words, "[t]he first step of the *Chevron* analysis is determining whether the statute is ambiguous or silent on the specific question at issue." *Woods*, 864 F.3d at 168.

"When Congress has explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation . . . and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *Mead*, 533 U.S. at 227, 121 S. Ct. 2164 (quotations and citation omitted). In other words, the court must determine "whether the

agency's interpretation [of the statute] is 'reasonable.'" *Cappetta*, 904 F.3d at 166 (quoting *Michigan v. EPA*, --- U.S. ---, 135 S. Ct. 2699, 2707, 192 L. Ed. 2d 674 (2015)); *see also Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 139 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 2679, 201 L. Ed. 2d 1073 (2018) ("*Chevron* requires a federal court to accept a federal agency's construction of a statute so long as the statute is ambiguous and the agency's interpretation is reasonable." (quotations, alterations and citation omitted)). "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843, n. 11, 104 S. Ct. 2778; *see also Woods*, 864 F.3d at 169 ("[S]o long as the [agency's] interpretation is reasonable, [the reviewing court] defer[s] to it 'whether or not it is the only possible interpretation or even the one a court might think best.'" (quoting *Holder v. Martinez Gutierrez*, 566 U.S. 583, 591, 132 S. Ct. 2011, 182 L. Ed. 2d 922 (2012))). "[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer. . . ." *Chevron*, 467 U.S. at 844, 104 S. Ct. 2778.

Section 101(a)(27)(J) of the INA expressly defines the term "special immigrant" to mean, with exceptions not relevant here:

> "an immigrant who is present in the United States-- (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status. . . ."

8 U.S.C. § 1101(a)(27)(J). The statute, *inter alia*, does not define the term "juvenile court," and is silent with respect to how an immigrant may apply for SIJ status.[12]

Although plaintiff alleges that "[d]efendants violated provisions of the [APA] in making 8 C.F.R. § 204.11 a rule as it contradicts 8 U.S.C. § 1101(a)(27)(J) and is thus an impermissible interpretation of the statute[,]" (Compl., ¶ 61), the complaint does not identify any specific provision of § 204.11 that actually contradicts the statute; nor otherwise indicate how that regulation is based upon an impermissible construction of the statute.[13] Subsection (a) of the regulation defines the terms "juvenile court" and "eligible for long-term foster care," which are not defined in the statute. 8 C.F.R. § 204.11(a). Subsection (b) of the regulation prescribes who may file the petition for SIJ classification and how to do so, *id.*, matters on which the statute is silent. Subsection (c) of the regulation provides who is eligible for SIJ classification under the

---

[12] Moreover, although the language of 8 U.S.C. § 1101(a)(27)(J) does not expressly indicate that the applicant must be a juvenile, minor, child, or otherwise of or under a certain age, it is clear by, *inter alia*, the statutory language, including the references to "juvenile court," "custody," "reunification with parents" and "special immigrant juvenile status," none of which are specifically defined in the INA, that Congress intended that provision to apply only to juvenile immigrants, *i.e.*, immigrants of or under a certain age. Indeed, other provisions of the INA specifically refer to an immigrant applying for, or granted, special immigrant status under 8 U.S.C. § 1101(a)(27)(J) as a "child." *See, e.g.* 8 U.S.C. § 1232(d)(4)(A) ("A child who has been granted special immigrant status under section 101(a)(27)(J) of the [INA]. . . ."); *Id.* § 1232(d)(6) ("[A]n alien described in section 101(a)(27)(J) of the [INA] . . . may not be denied special immigrant status under such section after December 23, 2008 based on age if the alien was a child on the date on which the alien applied for such status.") The term "child" is defined in the INA to mean, in relevant part, "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b). Thus, the eligibility criteria of 8 C.F.R. § 204.11, requiring, *inter alia*, that an alien applying for SIJ classification under Section 101(a)(27)(J) of the INA be under twenty-one (21) years of age and unmarried, 8 C.F.R. § 204.11(c)(1) and (2), are clearly consistent with the statute.

[13] In her opposition to defendants' motion, plaintiff contends, for the first time, that USCIS's alleged requirement that the Family Court "orders must reach [it] before the [applicant's] 21st birthday . . . runs afoul of the statute which allows minors to apply for SIJ status until they are 21 years of age." (Plf. Mem. at 6). However, as set forth above, since plaintiff had not been "declared dependent on a juvenile court located in the United States or . . . legally committed to, or placed under the custody of . . . an individual or entity appointed by a State or juvenile court located in the United States," 8 U.S.C. § 1101(a)(27)(J)(i); nor had it been "determined in administrative or judicial proceedings that it would not be in [her] best interest to be returned to [her] or [her] parent's previous country of nationality or country of last habitual residence," *id.*, § 1101(a)(27)(J)(ii), when she filed her I-360 Petition, she was not a "special immigrant" within the meaning of Section 101(a)(27)(J) of the INA when she filed the benefit request. Moreover, as set forth below, the "age-out" provision of Section 235(d)(6) of the TVPRA does not save plaintiff's I-360 Petition because it was not denied based upon her age; it was denied for plaintiff's failure to establish eligibility for the benefit, *i.e.*, SIJ classification, under Section 101(a)(27)(J) of the INA.

statute and generally mirrors the statutory requirements. *Compare id.*, § 204.11(c) *with* 8 U.S.C. §§ 1101(a)(27)(J) and (b). Subsection (d) of the regulation prescribes the "[i]nitial documents which must be submitted in support of the petition" in order to establish eligibility for SIJ classification. *Compare* 8 C.F.R. § 204.11(d) *with* 8 U.S.C. § 1101(a)(27)(J)(i)-(ii). Subsection (e) of the regulation provides for notice to the petitioner of a decision on his or her petition for SIJ classification, the reasons for a denial and the right to appeal the decision. 8 C.F.R. § 204.11(e). None of those provisions contradict the statute, either directly or indirectly, and are otherwise reasonable and permissible constructions of 8 U.S.C. § 1101(a)(27)(J). Accordingly, the branch of defendants' motion seeking judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure dismissing plaintiff's claim challenging the validity of 8 C.F.R. § 204.11 is granted and that claim (sixth claim for relief) is dismissed in its entirety with prejudice for failure to state a plausible claim for relief.

### c.    Claim pursuant to 8 U.S.C. § 1232(d)(6)

Section 235(d)(6) of the 2008 TVPRA provides: "Notwithstanding any other provision of law, an alien described in section 101(a)(27)(J) of the [INA] . . . may not be denied special immigrant status under such section after December 23, 2008 *based on age* if the alien was a child on the date on which the alien applied for such status." 8 U.S.C. § 1232(d)(6) (emphasis added). Plaintiff contends, *inter alia*, that since the Family Court orders were issued on August 25, 2015, the day before her twenty-first (21st) birthday, USCIS "was required to grant the I-360 [Petition] with no orders attached, because [it] could have checked with the Nassau County Family Court that the required judicial findings (and orders) were issued one day before [her] 21st birthday." (Plf. Mem. at 1-2; *see also Id.* at 4 ["[US]CIS and the federal government were

bound by [the Family Court] order[s] when the family court judge ruled from the bench"]; and *Id.* at 9 ["By the time [US]CIS reviewed the I-360 [Petition], it was true that the family court orders were approved"]).

Defendants did not violate 8 U.S.C. § 1232(d)(6) in denying plaintiff's I-360 Petition because, *inter alia*, plaintiff's I-360 Petition was not denied based on plaintiff's age. Nor did USCIS deny plaintiff's I-360 Petition, as alleged by plaintiff, because it "did not receive the family court orders in time[,] . . . [or] because [plaintiff] turned 21 years of age while the orders were in transit." (Plf. Obj. at 3). Rather, plaintiff's I-360 Petition was denied, *inter alia*, because she was not eligible for SIJ classification at the time she filed the I-360 Petition since, despite her assertions to the contrary in the I-360 Petition, she was not the subject of a valid juvenile court order containing a dependency or custody determination, as required by 8 U.S.C. § 1101(a)(27)(J), at the time of filing. (*See* AR at 55, 63). Therefore, the branch of defendants' motion seeking judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure dismissing plaintiff's claim alleging that they violated 8 U.S.C. § 1232(d)(6) by failing to grant her I-360 Petition is granted and that claim (second claim for relief) is dismissed in its entirety with prejudice.

There being no clear error on the face of the Report with respect to the findings and conclusions of Magistrate Judge Brown to which no specific objections are interposed, those branches of the Report are accepted in their entirety.[14] Accordingly, for the reasons set forth

---

[14] Moreover, for the reasons set forth in this Court's decision in *Espinoza Calle v. Whitaker*, No. 18-cv-1957, 2019 WL 447324 (E.D.N.Y. Jan. 31, 2019), *appeal filed*, No. 19-532 (2d Cir. Mar. 1, 2019), plaintiff's mandamus claims, including her claims pursuant to 5 U.S.C. § 706(1), are moot, and her claim alleging a violation of the *Perez-Olano* Settlement Agreement (third claim for relief) and due process claim (fourth claim for relief) are without merit. Specifically, since, *inter alia*, plaintiff received an adjudication of her I-360 Petition, albeit not the outcome she desired, and is essentially challenging defendants' denial thereof, her mandamus claims and claims pursuant to 5 U.S.C. § 706(1) are moot. *Espinoza Calle*, 2019 WL 447324, at *6. Since, *inter alia*, plaintiff was not the subject of a valid dependency order at the time of filing her I-360 Petition, and USCIS denied her petition based upon her failure to establish eligibility for SIJ classification at the time of filing, and not based on her age at the time her I-360

herein and in the Report, defendants' motion for judgment on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure is granted; plaintiff's mandamus claims and claims

to compel agency action pursuant to 5 U.S.C. § 706(1) are dismissed in their entirety as moot;

and plaintiff's remaining claims are dismissed in their entirety with prejudice for failure to state a

plausible claim for relief.


II.     Conclusion

        For the reasons set forth above, the Report is accepted in its entirety and for the reasons

set forth herein and in the Report, defendants' motion for judgment on the pleadings pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure is granted; plaintiff's mandamus claims and

claims to compel agency action pursuant to 5 U.S.C. § 706(1) are dismissed in their entirety as

moot; and plaintiff's remaining claims are dismissed in their entirety with prejudice for failure to

state a plausible claim for relief. The Clerk of the Court shall enter judgment in accordance with

this Order and close this case.

SO ORDERED.

                                    _____/s/_____
                                    SANDRA J. FEUERSTEIN
                                    United States District Judge


Dated: March 31, 2019
       Central Islip, New York

---

Petition was adjudicated, plaintiff's claim alleging a violation of the *Perez-Olano* Settlement Agreement is without merit. *Id.* at *17. Since, *inter alia*, USCIS clearly considered the Family Court orders belatedly submitted by plaintiff in its consideration and determination of her I-360 Petition; plaintiff was provided notice of the decision denying her I-360 Petition, the reasons therefor and her right to appeal in accordance with 8 C.F.R. § 240.11(e); plaintiff moved to reopen and reconsider the denial decision in lieu of appealing it, and received timely notice of the decision dismissing her motion to reopen and for reconsideration and the reasons therefor; and plaintiff does not allege that she was denied adequate notice or a meaningful opportunity to be heard, or otherwise identify what other process was constitutionally due her, her complaint fails to state a plausible procedural due process claim. *Id.* at *18. The complaint also does not state a plausible substantive due process claim since, *inter alia*, plaintiff does not allege any constitutionally arbitrary or outrageous conduct on the part of defendants, and does not have a liberty interest in the favorable adjudication of her I-360 Petition. *Id.* at *19.